[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case is before this Court on appeal from a decision by the Rhode Island Department of Human Services (hereinafter "DHS") discontinuing plaintiff's receipt of public assistance benefits under the aid to families with dependent children program (hereinafter "AFDC"). Plaintiff seeks a reversal of DHS's decision. Jurisdiction in this superior court is pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS/TRAVEL
On July 29, 1992 plaintiff attended a face-to-face recertification interview with Jean Field, a DHS casework supervisor. At this interview the plaintiff reported that she was the owner of a 1987 Pontiac 6000 sedan. The agency worker determined that the value of the automobile was $2900, an amount in excess of eligibility requirements. The DHS Services Manual:
AFDC Program, Sec. 0212.05 states that eligibility is denied or terminated if the value of a recipient's available non-exempt resources exceeds a limit of $1000. Section 0212.10 of the Manual excludes an amount of $1000 equity value for real or personal property for each assistance unit. In determining eligibility, Sec. 0212.15.10.20 of the DHS Policy Manual excludes one automobile, valued at $1,500 or less. Any excess equity in a car is counted toward the $1000 resource limit. DHS Manual Sec. 212.10, 212.15.10.20. Based on the agent's valuation of the automobile and the above cited sections, the plaintiff was informed that her AFDC benefits would be terminated on August 15, 1992. Plaintiff filed a timely appeal.
A hearing took place on September 16, 1992 at the North Providence office of the DHS before Jim Dillon, a hearing officer for DHS. At this hearing, Monserrate Diaz, the plaintiff's mother testified that she purchased the vehicle for $2,100 and registered it in her daughter's name. (9/16/92 Trans. pp. 4-5). Ms. Diaz stated that the plaintiff's name was subsequently put on the bill of sale. (9/16/92 Trans. pp. 4-5). On September 3, 1992, Ms. Diaz repurchased the vehicle from her daughter for an amount of $600. After the repurchase, the registration in plaintiff's name was cancelled and the vehicle was re-registered in the name of Monserrate Diaz.
Ms. Carolyn Tritendi, an eligibility technician in the North Providence Office, testified for the DHS. She stated that plaintiff submitted the vehicle's registration certificate which indicated a gross sales price of $4,075.00. (9/16/92 Trans. p. 9). However, the July 30 termination letter reported that plaintiff's benefits would be terminated because her vehicle's was valued at an amount over $2,900.
The hearing officer subsequently rendered an unfavorable decision and plaintiff appealed to this court. Prior to decision, plaintiff, through counsel, was granted a motion to remand the matter back to the agency for the taking of additional evidence.
This supplemental hearing was conducted on February 4, 1993 before the same hearing officer. The sole purpose of this second hearing was to determine the value of the vehicle pursuant to the provisions set out in the DHS Manual. Section 212.15.10.20 describes the method by which the equity value of an automobile is determined. Specifically, the eligibility technician determines the wholesale/average trade-in value of the car as listed in the NADA used car guide book, commonly referred to as the Blue Book, minus any encumbrances. DHS failed to demonstrate at the original hearing that plaintiff's vehicle was valued pursuant to Sec. 212.15.10.20. Accordingly, testimony was taken at the supplemental hearing relative to the Blue Book value. Plaintiff's attorney introduced into evidence, without objection, the NADA "Blue Book" from July of 1992 (exhibit 1). This Blue Book listed the average trade in value of plaintiff's car, a 1987 Pontiac 6000 V-6, 4-door sedan, as $2,725.00. Plaintiff also produced a bill of sale, without objection, dated June 27, 1992. Ms. Diaz, plaintiff's mother, testified that the bill of sale was the original bill of sale which was completed on June 27, 1992 (2/14/93 Trans. p. 3). Ms. Diaz testified further that she purchased the car from a private owner and that both her signature and that of the seller appear on the document. (2/04/93 Trans. p. 3). The bill of sale, marked as exhibit 2, reflects that at the time the car was purchased the mileage on the car was in excess of 86,000. Also introduced without objection was a high mileage table taken from the NADA Blue Book. Using a mileage amount of 86,731, the mileage deduction for plaintiff's vehicle was listed as $550.
Mr. Jay Burdick, a DHS casework supervisor, represented the department at the supplemental hearing. Mr. Burdick noted the gross sales price as listed on the registration but agreed that the DHS Policy Manual provides that automobiles shall be valuated pursuant to the Blue Book.
DHS issued its revised administrative hearing decision on March 4, 1993. In his decision, the hearing officer questioned the credibility of the handwritten bill of sale and the testimony given relative to it by plaintiff's mother, Monserrate Diaz. (Decision p. 8). It was noted that the bill of sale was handwritten on a lined notebook pad, the top of which has been ripped. Id. Moreover, the hearing officer found that the bill of sale was fabricated at some time prior to the February 4, 1993 hearing, and that it was not in force either at the time of the September 16, 1992 hearing or at the time of the purchase of the subject vehicle. (Decision p. 11).
The decision further explains that because the bill of sale is so suspect as to be legally insufficient, and because the registration certificate identifies a gross sale price, thevalue of the subject vehicle must be that as listed in the blue book for the same make, model and year. That value is $2,725.00. However, the hearing officer refused to deduct any amount for high mileage; the reason being that such a deduction is not supported by the DHS Policy Regulations and would abrogate the underlying rationale that a single trade in value removes responsibility from the owner and the DHS agency representative to assess the value of vehicles.
Based on the above reasoning, the hearing officer determined the value of the vehicle to be fixed at $2,725. Therefore, plaintiff's assets were listed as being in excess of the limit set forth in Sec. 0212.05 and AFDC benefits were denied.
This court's review of the DHS decision is governed by Section 42-35-15(g) of the Rhode Island General Laws which provides in part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Essentially, when reviewing an agency decision this court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or weight of the evidence. Costav. Registry of Motor Vehicles, 543 A.2d 1307, 1209 (R.I. 1988);Carmody v. R.I. Conflict of Interest, 509 A.2d 453, 458 (R.I. 1986). Thus, the court must uphold the Agency decision if it finds any legally competent evidence upon which the agency decision rests. Turner v. Department of Employment Security,479 A.2d 740, 742 (R.I. 1984). Thus, the court will reverse factual conclusions of administrative agencies only when they are "totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). Of course questions of law decided by Administrative Agencies are not binding on the court. Carmody
at 458. Therefore, this court "may review questions of law to determine the law and its applicability to the facts." Chenot v.Bordeleau, 561 A.2d 891, 893 (R.I. 1989).
On appeal, plaintiff contends the following: DHS acted arbitrarily in ignoring the high mileage deductions when determining Blue Book value; DHS's valuation is inconsistent with its own regulations and constitutes an unreasonable method of valuation and; DHS' decision is inconsistent with applicable federal law requirements.
DISCUSSION
As stated previously, the DHS Manual valuates automobiles pursuant to the standards set forth in the NADA Blue Book. Equity value is determined by taking the difference between wholesale/average trade-in value of the automobile and the amount of total encumbrances. The average trade-in value for plaintiff's automobile is listed as $2,725 in the July 1992 edition of the Blue Book. In addition, the Blue Book expressly provides that a vehicle's value will be reduced by a certain amount depending on the mileage. This provision is located on the bottom of each page. The deduction is greater as the mileage increases, mileage being a contributing factor in the determination of the trade-in value of an automobile. The DHS has adopted the Blue Book method of valuation. It follows that the method must be used in its entirety. The high mileage deduction is an essential element in the valuation method and cannot be arbitrarily ignored.
DHS argued further and the hearing officer agreed, that the rational used in developing the blue book standard was to avoid having DHS workers or clients engage in a process for which they do not have the skill. Furthermore, DHS argues that "requiring its workers to deduct for mileage pushes the agency down the slippery slope of training its social workers to become automobile appraisers" (DHS memo p. 5). This Court does not agree. Obviously DHS workers are not skilled in the business of appraising vehicles. However, making reference to a readily available chart and computing a simple deduction does not amount to an appraisal of an automobile.
The hearing officer noted that the Blue Book does not make a deduction for physical damage. Further, he referred to DHSPolicy Manual Sec. 0212.15.10.20 which states in pertinent part: "If the automobile is not listed in the Blue Book or the recipient disputes the value as stated because of physicaldamage, the appraisal of a registered automobile dealer is accepted as evidence of the average trade in wholesale value" (emphasis added). The decision notes that plaintiff did not offer any evidence in the form of an appraisal of a registered automobile dealer to demonstrate that the listed Blue Book value is other than an actual market value. In this case plaintiff is not required to make such a showing and should not be faulted for failing to do so. First, plaintiff's automobile is listed in the Blue Book. Second, she is not disputing the value as stated because of physical damage. In fact, plaintiff has not made any claim that the value of her vehicle should be decreased because of physical damage. Rather, she agrees with the value stated in the Blue Book but correctly contends that such value should be further reduced according to the mileage deductions included within the Blue Book.
For the reasons herein set out, this Court finds that the DHS acted arbitrarily and was clearly erroneous in determining that a deduction should not be taken for high mileage. Notwithstanding this finding, this court is not in a position to determine the value of plaintiff's automobile or to further determine whether she meets the eligibility requirements set forth in Sec. 212.05 of the DHS Policy Manual. The agency expressly questioned the validity and credibility of the bill of sale as well as the testimony given regarding such document. Clearly, this court must be cautious not to substitute its judgment for that of the hearing officer with regard to the credibility of the witnesses or weight of the evidence concerning questions of fact. Costa,
543 A.2d at 1209 (R.I. 1988).
Plaintiff's testimony and the bill of sale introduced at the February 4, 1993 hearing constitute the only evidence of the subject vehicle's mileage. This court cannot say that the agency's finding that such evidence was incredible was clearly erroneous in light of the whole record.
However, as this court finds that the agency erred in determining the value of the vehicle, this matter shall be remanded to the agency in order to allow plaintiff the opportunity to present additional evidence relative to the automobiles mileage. Such action is permitted pursuant to § 42-13-15(g) and affords the DHS a chance to modify its original action if warranted by the new evidence. Lemoine v. Departmentof Mental Health Retardation and Hospitals, 113 R.I. 285, 291,320 A.2d 611 (1974).
For the reasons stated, the plaintiff's appeal is hereby granted, and the matter is remanded to the DHS for the taking of additional evidence as to mileage and with the direction that a deduction for such mileage be made from the average trade-in value attributed to the vehicle by the Blue Book. Such deduction shall be made pursuant to the Blue Book, consonant with the applicable sections of the DHS Policy Manual.